UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SONJA S.R., | ) | Case No. ED CV 16-1586-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Deputy Commissioner for Operations of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**<u>INTRODUCTION</u>**

On July 20, 2016, plaintiff Sonja S.R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of a treating

physician; and (2) whether the ALJ properly evaluated plaintiff's credibility. Plaintiff's Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-19; Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-9.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly considered the opinion of the treating physician and failed to properly assess plaintiff's credibility. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-eight years old on the alleged disability onset date, attended some college and has a phlebotomy certificate. AR at 44-45, 79, 256, 1193. Plaintiff has past relevant work as a surgical technician and medical laboratory assistant. *Id*. at 71-72.

On November 17, 2012, plaintiff filed an application for a period of disability and DIB, alleging an onset date of October 26, 2012 due to deep vein thrombosis, bipolar disorder, cancer, and hypertension. *Id*. at 79, 94. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 113-15, 121-26.

On March 4, 2016, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 36-78. The ALJ also heard testimony from David Rinehart, a vocational expert. *Id*. at 70-77. On March 23, 2016, the ALJ denied plaintiff's claim for benefits. *Id*. at 15-29.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 26, 2012, the alleged disability onset date. *Id*. at 17.

2

At step two, the ALJ found plaintiff suffered from the following severe impairments: coagulation defect with recurrent deep vein thrombosis ("DVT") of the right lower extremity and chronic venous insufficiency; dermatofibrosarcoma protuberans of the left wrist, status post-surgical excision in October 2011 and radiation finishing in February 2012; osteoarthritis and tendinosis of the left wrist and hand; osteoarthritis and tendinosis of the left shoulder; and obesity. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 21.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform a range of light work with the limitations that plaintiff could: lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for four hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks and the requirement to change to a standing position about every 45 minutes without being off task; push and pull within the lift and carry weight limitations, except push and pull with the right lower extremity only occasionally; reach above shoulder level with the left upper extremity occasionally and otherwise reach with the left upper extremity frequently; balance and stoop frequently; and kneel, crouch, crawl, and climb ramp and stairs occasionally. *Id*. The ALJ prohibited plaintiff from climbing ladders, ropes, or scaffolds; and from concentrated exposure to hazards such as unprotected heights, moving mechanical parts of

---

[1]  Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

equipment, tools, or machinery, and sharp objects. *Id*.

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a surgical technician and lab assistant. *Id*. at 27.

At step five, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including information clerk, office helper, and electronics worker. *Id*. at 28-29. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id.* at 29.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 2-5. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**DISCUSSION**

**A.** **The ALJ Failed to Provide Specific and Legitimate Reasons to Reject the Treating Physician's Opinion In Its Entirety, and the State Agency Physicians' Opinions Are Not Substantial Evidence to Fully Support the RFC Determination**

Plaintiff contends the ALJ failed to properly consider the opinion of treating physician Dr. Patricia Bogema. P. Mem. at 4-10. Specifically, plaintiff argues the ALJ's reasons for discounting Dr. Bogema's opinion were not specific and legitimate and supported by substantial evidence. *Id.* at 4-8. Moreover, plaintiff contends that the non-examining physicians' opinions did not constitute substantial evidence and therefore intimated the ALJ's RFC determination was not supported by substantial evidence. *Id.* at 9-10.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §

404.1527(b).[2]  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) ; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

---

[2]    All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

1. **Medical Opinions**

    a. **Dr. Patricia Bogema**

Dr. Patricia Bogema, an internist, treated plaintiff from March 2012 through at least the hearing date. AR at 1204. Plaintiff consistently reported to Dr. Bogema that she had pain in her thigh. *See, e.g., id*. at 748, 753, 1032, 1041. During the physical examinations, Dr. Bogema normally observed plaintiff had, from a musculoskeletal perspective, a steady gait and intact range of motion. *See, e.g., id*. at 750, 1043, 1092. But beginning in February 2014, Dr. Bogema observed muscle atrophy. *See id*. at 1173, 1268. With regard to plaintiff's extremities, Dr. Bogema initially observed palpable pulses only, but later also observed plaintiff had swelling and warmth in her lower right extremity. *See, e.g., id*. at 750, 754, 1043, 1054, 1173, 1268. Throughout 2012 and 2013, Dr. Bogema wrote letters to an unnamed recipient informing him or her that plaintiff was being treated for an unspecified medical illness and would need to temporarily remain off work. *See, e.g.*, *id*. at 752, 1040, 1051, 1059.

Dr. Bogema completed a Physical Residual Functional Capacity Questionnaire ("Questionnaire") on July 21, 2014. *Id*. at 1204-08. In the Questionnaire, Dr. Bogema diagnosed plaintiff with coagulation defect with a history of deep vein thrombosis and pulmonary emboli, a history of dermatofibrosarcoma in the left wrist, bipolar disorder, anxiety, and bone spurs with plantar fascitis. *Id*. at 1204. Dr. Bogema opined plaintiff: could not walk a city block without rest or severe pain; could sit forty-five minutes at a time for about two hours a day; could stand one hour at a time for less than two hours in an eight-hour work day; must walk more than fifteen minutes every hour; could lift/carry less than ten pounds frequently, ten pounds occasionally, and twenty pounds rarely; could frequently look down, turn the head, look up, hold the head, and twist; could rarely stoop, crouch, and climb stairs; and could never climb

ladders. *Id*. at 1205-07. Dr. Bogema also opined that with regard to grasping, turning, and twisting objects, fine manipulations, and reaching, plaintiff could use her right hand, fingers, and arms fifty percent of the eight-hour work day but the left hand and fingers only ten percent of the day and arm only thirty percent of the day.[3] *Id*. at 1207.

### b. State Agency Physicians

Dr. Lewis Singer and Dr. Luis M. Zuniga, State Agency physicians, reviewed plaintiff medical records and offered opinions as to her functional limitations. *See id*. at 84-89, 102-09. Based on a review of plaintiff's medical records from October 2011 through February 2013, Dr. Singer opined plaintiff could: lift/carry ten pounds frequently and twenty pounds occasionally; stand/walk a total of four hours; sit for a total of six hours; engage in limited pushing/pulling with her right lower extremity; occasionally climb ramps and stairs, kneel, crouch, and crawl; frequently balance and stoop; and never climb ladders, ropes, and scaffolds. *See id*. 84-89. After reviewing plaintiff's medical records from October 2011 through January 2014, Dr. Zuniga reached the same RFC determination as Dr. Singer. *Id*. at 102-09

### 2. The ALJ's Findings

The ALJ found that plaintiff had the RFC, in relevant part, to perform light work with the following limitations: lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, except that the right lower extremity can push and pull only occasionally; stand and walk for four hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour work day with regular breaks with the requirement to change to a standing position about every 45

---

[3]    It appears that either a page of the Questionnaire is missing or the last page was copied incorrectly because Dr. Bogema wrote "4/26/12" but there is no question to which the response belongs. *See* AR at 1207-08.

minutes without being off task; reach with the left upper extremity frequently except above the shoulder only occasionally; balance and stoop frequently; kneel, crouch, crawl, and climb ramps and stairs occasionally. *Id*. at 21. In reaching his RFC determination, the ALJ gave great weight to the opinions of the State Agency physicians, Dr. Singer and Dr. Zuniga, and little weight to the opinion of Dr. Bogema. *Id*. at 26.

### a. Dr. Bogema

Treating the letters and the Questionnaire as separate opinions, the ALJ gave little weight to both of Dr. Bogema's opinions. *Id*. First, the ALJ discounted Dr. Bogema's letter opinions that plaintiff should be "off work" because they were vague, they did not include any functional limitations, and the ultimate disability determination was reserved for the Commissioner. *Id*. It would be a stretch to conclude that Dr. Bogema's letters stating that plaintiff should remain "off work" on a temporary basis constituted an opinion that she was disabled from a social security disability perspective. Assuming that the letters constituted an opinion of disability, the ALJ properly rejected the opinion because it was conclusory and lacked specificity. Moreover, the ALJ correctly noted that it was within his purview, and not the physician's, to make the ultimate disability determination. *See* 20 C.F.R. § 404.1527(d).

The ALJ also rejected the Questionnaire opinion on the bases that the opinion was internally inconsistent and the right upper extremity limitations were not supported by substantial evidence. AR at 26-27; *see Huizar v. Comm'r*, 428 Fed. Appx. 678, 681 (9th Cir. 2011). With regard to the inconsistencies, the ALJ noted: (1) Dr. Bogema both opined that plaintiff could not walk a single block without rest or severe pain and that she must walk for more than fifteen minutes on an hourly basis; and (2) Dr. Bogema indicated that plaintiff had to be able to shift positions at will and that she could sit for 45 minutes at one time and stand for an

hour at one time.  AR at 26.  Although the Questionnaire responses are not a model of clarity, these examples are not necessarily inconsistencies.

First, in response to a question that asked how many blocks plaintiff could walk "without rest or severe pain," Dr. Bogema answered none.  *See id*. at 1205.  This did not mean that plaintiff could not walk a city block, but simply that she could only do so with rest or pain.  Taking into account Dr. Bogema's treatment notes and diagnoses, her response was not inconsistent.  At the time Dr. Bogema completed the Questionnaire, plaintiff was suffering from pain and swelling in her leg, Achilles tendintis, and bone spurs with plantar fasciitis, and therefore it would have been painful for her to walk.  *See id*. at 1171, 1189-91, 1204, 1210-11.  But plaintiff also suffered from coagulation defect with a history of three episodes of deep vein thrombosis and pulmonary embolism, which necessitated the walking requirements.  *See id*. at 750, 1295.  Thus, although it would have been painful for plaintiff to walk, it was a medical necessity.[4]  Nonetheless, the ALJ's determination that Dr. Bogema's walking limitations were inconsistent was a reasonable determination and the court will not substitute its judgment.

Dr. Bogema's opinion that plaintiff had to be able to shift positions at will but could sit for 45 minutes and stand for an hour at a time, however, was not internally inconsistent.  The fact that plaintiff could sit or stand for that period of time did not mean that she also did not require the ability to shift positions at will at times.

Finally, the ALJ discounted Dr. Bogema's opinion because there was no objective medical basis for her opined right upper extremity limitations.  *Id*. at 27; *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Dr. Bogema opined

---

[4]  After Dr. Bogema completed the Questionnaire, plaintiff underwent surgery of the right heel.  *See* AR at 1210-11.  Plaintiff had a right calcaneal exostectomy and Achilles repair, as well as right calcaneal plantar fascia release.  *See id*.  Plaintiff testified that she continued to experience heel pain.  *See id*. at 60.

plaintiff could only use her right upper extremity for fifty percent of an eight-hour work day for grasping, turning, or twisting objects, fine manipulation, and reaching. AR at 1207. The ALJ correctly found that there was no objective support for these limitations. Neither Dr. Bogema nor any other physician diagnosed plaintiff with any impairment that affected the right upper extremity.[5] Dr. Bogema's treatments notes also contained no subjective complaints the right upper extremity.

The ALJ then, in error, discounted the entirety of Dr. Bogema's Questionnaire opinion because he found that the two inconsistencies and the opined right upper extremity limitations undermined the credibility of the opinion as a whole. *Id*. First, as discussed above, Dr. Bogema's sitting and standing opinion was not inconsistent. Second, although the ALJ reasonably determined the walking opinion was internally inconsistent, given the evidence as a whole, it was not significant enough to undermine the entire opinion. Finally, although the unsupported portion of the opinion concerning the right upper extremity gave the ALJ reason to question the assessment as a whole, it was not by itself reason to discount the entire assessment and the ALJ cited no reasons why the other portions lacked credibility. *See Salaz v. Colvin*, 650 Fed. Appx. 926, 927 (9th Cir. 2016) (ALJ must give clear and convincing reasons for rejecting any portion of a treating physician's opinion); *accord Dale v. Colvin*, 823 F.3d 941, 945 (9th Cir. 2016) ("[A]n ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent.") (emphasis in original); *Bayliss v. Barnhart*, 427 F.3d 1211, 1212

---

[5]    Although plaintiff's counsel cited to a record stating plaintiff had surgery on her right wrist on October 27, 2011, this was clearly a typographical error; it was in fact on the left wrist. *See* AR at 599-606.

(9th Cir. 2005) (ALJ properly accepted lay testimony that were consistent with the record and rejected the portions that were not).

Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Bogema's letter opinion that plaintiff should be "off work" and the portions of Dr. Bogema's Questionnaire opinion concerning plaintiff's walking limitations and her right upper extremity limitations. But the ALJ erred when he rejected the remainder of Dr. Bogema's Questionnaire opinion.

### b. State Agency Physicians

Plaintiff further argues that even if the ALJ had properly discounted Dr. Bogema's entire Questionnaire opinion, his RFC determination was not supported by substantial evidence because he only relied on the opinions of the State Agency physicians, whose opinions were not substantial evidence. P. Mem. at 9-10.

The opinion of a non-examining physician, by itself, cannot constitute substantial evidence. *Widmark*, 454 F.3d at 1066 n.2; *Morgan*, 169 F.3d at 602. But "[t]he opinions of non-treating or non-examining physicians may [] serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831 (9th Cir. 2010) (citing *Thomas*, 278 F.3d at 957).

In giving the State Agency physicians' opinions great weight, the ALJ noted that the opinions were consistent with the evidence of record, including the objective medical evidence, and the State Agency physicians had an understanding of Social Security disability programs and their requirements. AR at 26. Although the ALJ gave great weight to the State Agency physicians' opinions, he did not adopt them wholesale. Recognizing the State Agency physicians did not review the records concerning plaintiff's left upper extremity, the ALJ incorporated limitations to its use. *See id*. Without discussing why and in contrast to the State

12

Agency physicians, the ALJ also determined plaintiff required the ability to change from a sitting to a standing position about every 45 minutes without being off task.[6] *Id*. at 21.

Here, the State Agency physicians' opinions were, for the most part, consistent with the other evidence in the record up to January 2014. After plaintiff suffered from a third episode of deep vein thrombosis in her right leg in March 2012, this time without pulmonary embolism, it was determined that plaintiff would require anticoagulation medication for life. *See id*. at 955-59, 1078-82. Although plaintiff continued to suffer from pain and swelling in her right lower extremity, she did not suffer from another blood clot or pulmonary embolism after the March 2012 incident. Arguably, the State Agency physicians' opinion that plaintiff required only normal breaks while standing, walking, and sitting appeared to be inconsistent with plaintiff's history of DVT. But the ALJ did not adopt that portion of the opinions and instead determined the evidence showed that plaintiff required the ability to change from sitting to standing at a more frequent interval, presumably factoring in the history of DVT. *See id*. at 21.

Nevertheless, the State Agency physicians' opinion did not constitute substantial evidence because they did not consider the later medical evidence. The unreviewed records from the 2014 through 2015 reflect that plaintiff suffered from, among other impairments, right Achilles tendinitis, Haglund's deformity, gallbladder sludge, diverticulosis, partial tear in the left wrist, mild osteoarthrosis in the left wrist, tendinosis/tendinitis and joint degenerative changes in the left shoulder area. *See id*. at 1190, 1277, 1287-90. Some of the later submitted medical evidence such as the diverticulosis and gallbladder sludge reflected

---

[6] Despite giving Dr. Bogema's opinion little weight, the ALJ appeared to have considered and given some weight to her opinion that plaintiff required a job that permitted her to change positions at will. *See* AR at 1206.

temporary conditions. *See id*. at 1274, 1285. Plaintiff underwent a
cholecystectomy in October 2015. *Id*. at 1285. But the other unreviewed medical
evidence reflected potentially long-term conditions.

Regarding plaintiff's right Achilles tendinitis and Haglund's deformity, it
began in January 2014 and physicians initially treated the impairments with
physical therapy and a cortisone injection. *See id*. at 1180-83, 1219, 1228. In July
2014, plaintiff underwent a right calcaneal exostectomy and Achilles repair and
right calcaneal plantar fascia release. *See id*. at 1210-11. After the surgery,
plaintiff's right ankle improved and she was able to walk thirty minutes a time
twice daily by December 2014. *See id*. at 1213, 1264. The medical record does
not contain further complaints about the right heel and ankle after 2014, but
plaintiff complained about continued right heel pain at the hearing. *Id*. at 60.

As for the left upper extremity and wrist impairments, both appeared to
begin in 2015. An October 2015 MRI of the left wrist showed that plaintiff had a
moderate-grade partial tearing of extensor carpal ulnaris tendons on a background
of tendinosis with mild-to-moderate tensynovitis and mild adjacent subcutaneous
edema, as well as mild osteoarthorsis of the first carpometacarpal joint. *Id*. at
1289-90. A November 2015 MRI of her left shoulder indicated plaintiff suffered
from, among other thing, tendinosis/tendinitis over various parts of the shoulder,
glenohumeral joint degenerative changes, and a thickened joint capsule. *Id*. at
1287-88.[7]

The ALJ only acknowledged the State Agency physicians did not review the
left shoulder MRI images and limited plaintiff to reaching above shoulder level
occasionally and otherwise reaching frequently based on his lay interpretation of
the MRI. *Id*. at 21. The ALJ also concluded, without the aid of a medical opinion,

---

[7]   Likely because of the proximity of the diagnoses to the hearing, the record
does not contain treatment records for these impairments.

that plaintiff's left wrist MRI did not reflect any impairments requiring functional limitations. But an ALJ may not act as his own medical expert since he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993) ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual.").

Therefore, the State Agency physicians' opinions were mostly consistent with the medical evidence prior to 2014 and would constitute substantial evidence to support the ALJ's RFC determination if the assessment were limited to that period. But plaintiff developed several new impairments subsequent to the State Agency physicians' review and the ALJ's RFC determination was based on his own lay interpretation of that evidence.[8] Consequently, the State Agency physicians' opinions did not constitute substantial evidence.

Accordingly, although the ALJ properly rejected Dr. Bogema's letter opinion and portions of Dr. Bogema's Questionnaire opinion, he failed to provide specific and legitimate reasons for discounting the opinion in its entirety. Moreover, even had the ALJ properly discounted Dr. Bogema's opinion, his RFC determination was not supported by substantial evidence because the State Agency physicians did not consider the entire record.

**B.** **The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff argues the ALJ failed to properly evaluate her credibility. P. Mem. at 11-19. In a March 2013 Pain Questionnaire, plaintiff reported that she had pain from her right knee to the groin area; long bouts of standing, walking, and sitting

---

[8] The ALJ did not discuss the evidence concerning plaintiff's heel and ankle impairments in his discussion regarding plaintiff's walking limitations.

caused pain; and she had difficulty, among other things, kneeling, squatting, climbing stairs, squatting, and stooping. *Id*. at 276-77. At the hearing, plaintiff testified that she could not stand or walk for long periods; had to keep her legs elevated about six hours a day; had three tears, arthritis, and tendinitis in her left wrist; had arthritis and tendinitis in her left shoulder; and had constant pain in her right heel. *See id*. at 54-60. Plaintiff explained that as a result, she could sit 45 to 60 minutes before having to change positions, could stand one to two hours at a time, could not walk a block, could lift ten pounds with her right hand and none with her left hand, had problems reaching with her left shoulder, and had problems grasping with her left hand. *Id*. at 67-69. Plaintiff contends the ALJ's reasons for discounting her credibility were not clear and convincing and supported by substantial evidence. P. Mem. at 11-19.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

An ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course

of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The lack of objective medical evidence to support allegations of limitations is also a factor that may be considered when evaluating credibility, but it may not be the only factor considered. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 22. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ provided three general reasons for discounting plaintiff's credibility: (1) her statements were inconsistent with or unsupported by the medical evidence; (2) her activities of daily living were inconsistent with her testimony; and (3) she failed to adhere to her treatment plan. *Id*. at 22-25.

### 1.   Inconsistency with Medical Evidence

The ALJ's primary reason for discounting plaintiff's credibility was that her allegations were inconsistent with or unsupported by the medical evidence. *See id*. at 23-25; *see Rollins*, 261 F.3d at 856-57.

First, the ALJ determined plaintiff's statements concerning her ability to walk were inconsistent with the medical evidence. AR at 23. The ALJ noted that plaintiff alleged her pain made it difficult to walk, specifically for extended periods, but her treatment notes indicated that she had a normal or steady gait and she walked thirty minutes twice daily for exercise. *See id*.; *see also id*. at 754, 1192, 1262, 1264, 1282. This determination by the ALJ was supported by

substantial evidence. The fact that plaintiff, after her heel surgery, was able to walk thirty minutes twice daily for exercise was inconsistent with her hearing testimony that she could not walk a block.[9] *See id*. at 68, 1282.

Second, the ALJ found plaintiff's testimony that she had significant complications from asthma was not supported by the record. The ALJ did not err. None of the treatment records contain complaints or objective findings of asthma, problems with breathing, or chest pain. *See id*. at 1071, 1101, 1177, 1298.

Third, the ALJ found that plaintiff's testimony that she was in "constant pain" was contradicted by her November 11, 2015 report to a treating physician that she "felt well." *Id*. at 23, 1298. Here, the ALJ mischaracterized plaintiff's statement to the physician. On November 11, 2015, plaintiff saw Dr. James Y. Tsai to follow up on her history of dermatofibrosarcoma protuberans, the radiation therapy, and her episodes of DVT. *See id*. at 1297. Plaintiff reported to Dr. Tsai that she clinically "felt well" but reported pain in her left wrist that sometimes radiated up her arm. *See id*. at 1298. The ALJ cited to plaintiff "feeling well" in isolation and disregarded the physician's other notes. Thus, the ALJ's finding that plaintiff's testimony of pain was inconsistent with the records was not supported by substantial evidence.

Fourth, the ALJ concluded that plaintiff's testimony that she had significant lower extremity numbness and pain was inconsistent with a March 2015 treatment note observation that plaintiff had no tremors, had no gross focal deficits, and moved all extremities normally; a December 2013 observation that she had a steady gait, a normal range of motion, and normal neurological functions; and a May 2015 denial of pain or numbness. *Id*. at 24. Putting aside that plaintiff did not testify as to numbness, the ALJ's finding still was not supported by substantial

---

[9] Plaintiff's ability to walk for thirty minutes, however, was consistent with prior statements concerning her walking limitations. *See* AR at 303, 305.

evidence. Instead, the ALJ cherry picked from the record and ignored the other evidence. The ALJ primarily cited neurological findings from the December 2013 and March 2015 treatment notes, but plaintiff's impairments were musculoskeletal or vascular. *See id*. at 1034, 1262. The fact that plaintiff exhibited a steady gait at the doctor's office and normal range of motion in her extremities did not mean plaintiff did not suffer from lower extremity pain. Moreover, both treatment notes reflect that plaintiff had peripheral edema and palpable pulses, which were consistent with plaintiff's testimony. *See id*. As for the May 2015 report that she had no pain or numbness, that single report is not enough to constitute substantial evidence.

Fifth, the ALJ stated that plaintiff claimed to have significant abdominal pain but the medical records showed that her pain had been resolved. *See id*. at 23. Plaintiff did not testify at the hearing that she had significant abdominal pain. Instead, she testified that she was hospitalized in 2014 for diverticulosis and later had gallbladder surgery. *Id*. at 59; *see also id*. at 1274, 1285. Thus, although the ALJ correctly noted that plaintiff's abdominal pain was resolved, plaintiff did not testify as to continued abdominal pain and therefore there was no inconsistent testimony.

Sixth, the ALJ found plaintiff's testimony that she had arm and wrist pain and numbness was unsupported by the evidence and inconsistent with both her self-report that she had no problems in those areas and a treatment note that indicated plaintiff had no tremors, had no gross focal deficits, and moved all extremities normally. *Id*. at 23-25. Regarding the ALJ's claim of lack of evidentiary support, the 2015 MRIs plainly show that plaintiff suffered from impairments that could lead to arm and wrist pain, including tendinosis/tendinitis, fraying/focal low grade partial tear, joint degenerative changes, and a thickened joint capsule in the shoulder and tearing and tenosynovitis in the wrist. *See id*. at

1287-90. With regard to the left wrist specifically, the ALJ concluded that the objective medical evidence following the surgical excision and radiation did not support plaintiff's allegations because she had no tenderness, effusion, or pitting following the surgery, as well as no recurrence of the tumor. *See id* at 24-25; *see also id.* at 881, 901. But plaintiff, at the hearing, did not allege that she currently had cancer and instead testified that her symptoms resulted from tears, arthritis, and tendinitis, which was a side effect of the radiation. *Id*. at 56. The MRI reflects these injuries. *Id*. at 1289-90, 1298. Although the ALJ may be correct that the objective evidence did not support the degree of limitations alleged by plaintiff, the ALJ only offered his own interpretation of the objective evidence. *See Day*, 522 F.2d at 1156 (ALJ should not make his own assessment of the medical findings).

The ALJ also cited inconsistencies with the objective neurological findings – no focal nodules or focal areas of pain – and a treatment note as bases for discounting plaintiff's arm and wrist complaints. AR at 24-25. The neurological findings were irrelevant because plaintiff's impairments were musculoskeletal. As for the treatment note, it was a note for a follow up visit in 2013 after the resection of her dermatofibrosarcoma protuberans during which plaintiff reported she had some stiffness and numbness but was able to do her regular activities. *Id*. at 879. This statement was made several years before plaintiff developed a tear and tendinosis in her left wrist. Thus, the cited inconsistencies were not supported by substantial evidence.

Finally, the ALJ found that the objective medical evidence did not support plaintiff's complaints relating to her deep vein thrombosis. *Id*. at 24. The record clearly reflects that plaintiff had three episodes of DVT, two with pulmonary emboli, and would be on anti-coagulation medication for the remainder of her life due to a coagulation defect. *See* AR at 611, 789, 955, 1078, 1297. The ALJ found, however, that these medical findings were unremarkable because plaintiff had

normal neurological findings, a steady gait, normal range of motion, and denied pain or numbness on one occasion. *See id*. at 24. The ALJ also claimed that evidence showed plaintiff had a low probability of a pulmonary embolism. *See id*. As discussed above, the neurological findings were not relevant as plaintiff's impairments were not neurological, the ability to walk with a normal gait for a short period of time was not inconsistent with her complaints, and a one-time or occasional denial of pain was not substantial. As for the purported low probability of a pulmonary embolism, the ALJ once again misread the record. When plaintiff had her third episode of deep vein thrombosis, the hospital took images and concluded that plaintiff had a low probability of pulmonary embolism in that instance. *See id*. at 951. The physician did not find that plaintiff had a low probability of pulmonary emoblism in the future. To the contrary, plaintiff was found to have a coagulation defect and would require anti-coagulation medication for life. *See id*. at 1078. Again, the objective medical evidence may ultimately not support the degree of limitations alleged by plaintiff, but the ALJ's cited reasons for rejecting her testimony were not supported by substantial evidence.

Accordingly, the ALJ did not err when he determined that plaintiff's testimony concerning her inability to walk a block and her asthma were inconsistent with and unsupported by the objective medical evidence. The remainder of the inconsistencies, however, were not supported by substantial evidence.

### 2. <u>Activities of Daily Living</u>

A second cited reason for finding plaintiff less credible was that her activities of daily living were inconsistent with her testimony regarding disability and demonstrated a capacity to work. *Id*. at 22.

Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible.

*Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47; *see Thomas*, 278 F.3d at 958-59 (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting" may be sufficient to discredit a claimant). But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair*, 885 F.2d at 603.

In the March 2013 and January 2014 Function Reports, plaintiff reported that she prepped and cooked meals, did her own personal grooming, did minimal housework, did routine grocery shopping, and engaged in her hobbies and social activities. AR at 278-79, 301-02. Plaintiff elaborated that she spent thirty to sixty minutes on meal preparation in 2013 and ten to fifteen minutes on meal preparation in 2014, and her meals consisted of frozen food, salad, sandwiches, and cereal. *See id*. at 280, 302. Plaintiff's housework consisted of light laundry, making the bed, light dusting, and mopping the floor of a small trailer. *See id*.

Plaintiff's activities were for the most part consistent with her statements concerning her alleged physical and mental symptoms. Plaintiff's alleged physical limitations were her inability to stand and walk for long periods of time, the requirement for sitting accommodations, and difficulties with reaching, squatting, and bending. Plaintiff's ability to prepare meals such as sandwiches and salads, do laundry, dust, shop, and handle money were not inconsistent with her alleged

symptoms.[10]  Other than plaintiff's twice daily thirty-minute walks, which were inconsistent with her testimony that she could not walk a block, her activities did not exceed her alleged standing, sitting, and other exertional limitations.  Similarly, none of the activities of daily living were inconsistent with plaintiff's alleged mental limitation in her ability to concentrate.

The ALJ also determined plaintiff's daily activities demonstrated the capacity for work.  *Id*. at 22.  But there was no evidence that plaintiff was spending a substantial part of her day engaging in her listed daily activities.

Thus, plaintiff's daily walks were inconsistent with her testimony, but the remaining daily activities were not a basis for finding her less credible.

### 3.    Failure to Adhere to Treatment Plan

Finally, the ALJ cited plaintiff's failure to follow the prescribed treatment plan as a basis for discounting her credibility.  *Id*. at 23.  Specifically, the ALJ observed that a medical record noted that there was "some non-compliance with treatment" and plaintiff did not stop smoking cigarettes against medical advice.  *Id*.

The failure to follow a prescribed course of treatment weighs against a claimant's credibility unless there was good reason for not doing so.  *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Here, there was only one mention of non-compliance with the treatment plan and the physician cited depression as the reason for the non-compliance.  *See* AR at 937; *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking

---

[10]    In the March 2013 Function Report, plaintiff listed some hobbies and interests that appear to exceed her alleged limitations, including horseback riding and going to amusement parks.  *See* AR at 282.  Plaintiff reported that she only did her hobbies as her schedule permitted and that her symptoms affected her ability to engage in these activities.  *See id*.  Reading the Function Report liberally, the court assumes that plaintiff no longer engages in many of those activities.

rehabilitation.") (internal quotation marks and citation omitted). Although the ALJ did not find that plaintiff suffered from a severe mental impairment, given that the physician thought the non-compliance was due to depression and it was only one instance, the treatment note did not constitute substantial evidence of non-compliance.

As for plaintiff's failure to cease smoking, it is unclear whether this is a valid basis for an adverse credibility assessment. *See Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (recognizing that the failure to stop smoking possibly may not be a reason for an adverse credibility finding given its addictive nature); *Steiger v. Colvin*, 2013 WL 1010453, at *3 (C.D. Cal. Mar. 14, 2013) ("[I]t is unclear whether a failure to stop smoking can ever form the basis for an adverse credibility finding."); *Gibson v. Astrue*, 2012 WL 5198329, at *2 n.3 (C.D. Cal. Oct. 19, 2012) (whether a claimant's failure to stop smoking can support an adverse credibility finding is an open question). Some district courts in the Ninth Circuit have found that the failure to cease smoking was a basis for an adverse credibility finding, but in each instance, the claimant's condition was aggravated by the smoking. *See, e.g., Taylor v. Colvin*, 2016 WL 704352, at *13 (E.D. Cal. Feb. 23, 2016). Even assuming plaintiff's continued smoking could be a basis for an adverse credibility finding here, it is inferable from the record that plaintiff had attempted to stop, did not smoke frequently, and the smoking did not prohibit plaintiff from working. *See Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995) (declining to review the ALJ's credibility finding because the ALJ did not find that plaintiff could return to work if he ceased smoking); *see also, e.g.,* AR at 1193, 1219, 1300.

Accordingly, the court cannot affirm the ALJ's credibility finding on the basis of failure to adhere to a treatment plan because it was not supported by substantial evidence.

In sum, the ALJ cited some reasons supported by substantial evidence for finding plaintiff less credible. In some cases, that the ALJ discounted plaintiff's credibility based on some reasons that were not in fact clear and convincing is harmless error. *See Batson*, 359 F.3d at 1195-97 (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record). But the majority of reasons cited here were not clear and convincing and supported by substantial evidence. Given this, the few clear and convincing reasons cited by the ALJ were not sufficient by themselves for the ALJ to have discounted plaintiff's credibility. As such, the ALJ erred in discounting plaintiff's credibility for the reasons he stated.

## V.

## <u>REMAND IS APPROPRIATE</u>

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the

evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to resolve outstanding issues. On remand, the ALJ shall reconsider the opinion of the treating physician and either credit the medical opinion or provide legally sufficient reasons supported by substantial evidence for rejecting it. The ALJ shall also reconsider plaintiff's credibility and either accept her testimony or provide clear and convincing reasons for rejecting it. Given the additional unreviewed medical evidence, the ALJ should retain either a consultative examiner or medical expert, as well as obtain and review any additional needed medical evidence to help his inquiry. The ALJ shall then proceed through steps two, three, four, and five to determine what work, if any, plaintiff was capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED: July 16, 2018

_____
SHERI PYM
United States Magistrate Judge